64 So.2d 604

### FORT v. STATE.

5 Div. 348.

Court of Appeals of Alabama.

Jan. 20, 1953.

Rehearing Denied March 3, 1953.

A. Drew Redden, Tallassee, for appellant.

Si Garrett, Atty. Gen., and Thos. F. Parker, Asst. Atty. Gen., for the State.

PRICE, Judge.

Under an indictment charging murder in the first degree, the defendant was convicted of murder in the second degree and his punishment fixed at 10 years' imprisonment in the penitentiary. From the judgment of conviction and the action of the court in overruling the motion for a new trial, this appeal is prosecuted.

The evidence is without dispute that Jesse Joseph Willard died shortly after a personal encounter with defendant, and that the cause of his death was a wound in the region of the heart, produced by a knife.

The evidence for the State tends to show that on the Saturday night in question defendant and his wife were in a cafe in Tallassee when deceased came in. Defendant and deceased had a conversation in which deceased stated defendant's wife had defendant hoodooed or tricked. Deceased then asked defendant if he was mad and defendant answered, "no." They shook hands and deceased went out the door.

Robert Cunningham testified he was present at the difficulty outside the cafe. He heard deceased tell defendant he would slap him; defendant replied, "You'll be sorry if you do." Deceased said: "If you will come out here I will slap you." Defendant then stated: "I am coming out there," he walked out the door and asked "Am I far enough." Deceased, answered, "No, you are not quite far enough." Defendant took two or three steps, and asked, "Am I far enough now?" Deceased replied "Yes, you are far enough" and slapped defendant. Defendant then struck deceased with a knife, inflicting a mortal wound.

The witness stated he never saw deceased move from the time he first started talking about the slapping until defendant walked up to him.

The testimony of State's witness, Legs Bardon, was to the same effect.

Defendant contended deceased came to his home thirty minutes to an hour prior to the killing. He had been drinking and had a pint of whiskey from which he offered defendant a drink. He began teasing defendant about defendant's wife having defendant tricked when defendant told him to leave, he said: "I will leave but I am coming back, you ain't going to be around long." Later he came into the

cafe, and began teasing defendant again about his wife. Defendant then shook hands with him and asked if he was mad, and deceased told him he would see him outside. When defendant and his wife started home he found deceased waiting. Defendant did not know until then that he was outside. Deceased struck defendant a blow on the head with his fist, which staggered him, and defendant testified: "He grabbed me and tussled around there and I hit him, I reckon, and that's when I cut him I guess, and he turned me loose, and I thought he was going to come at me and I just ran."

Defendant introduced evidence that deceased was a large man, weighing around two hundred fifty pounds, and was a baseball player, and defendant only weighed one hundred thirty pounds. He also introduced evidence to prove defendant's good character for peace and quietude and that deceased's reputation for peace and quietude was bad.

A showing for an absent witness, Mose Matthews, was to the effect that on the way to the hospital deceased raised up and pushed an object out the car window, and the next morning witness found a knife on the running board on that side.

The theory of the defense was that the act was done in self defense or as a result of passion suddenly aroused by the blow struck by deceased.

In the case of Cooley v. State, 233 Ala. 407, 171 So. 725, 727, the Supreme Court held:

"it is well settled that, when one kills another by the intentional use of a deadly weapon, malice, design, and motive may be inferred without more, and are presumed, unless the evidence which proves the killing rebuts the presumption, and casts on defendant the burden of rebutting it, and to show self-defense or other justification, if he can."

Defense counsel insists the case should be reversed because the trial court overruled the motion for a new trial, based on the ground that the verdict was contrary to the preponderance of the evidence.

 "A motion for a new trial on the grounds that, 'the verdict of the jury was contrary to the evidence,' will not be granted where it affirmatively appears that the questions involved are for the determination of the jury, unless it is clearly apparent that the verdict is palpably wrong or unjust." Smith v. State, 23 Ala.App. 488, 128 So. 358, 359; certiorari denied 221 Ala. 217, 128 So. 359; Davis v. State, 29 Ala.App. 421, 198 So. 153, 154; certiorari denied 240 Ala. 160, 198 So. 155; Davis v. State, 33 Ala. App. 299, 34 So.2d 15.

All of the questions involved here were for the determination of the jury, and, after a full and careful consideration of the evidence adduced on the trial, we are of the opinion it was sufficient to sustain the verdict, and the trial court should not be put in error in overruling the motion for a new trial.

There being no reversible error in the record, the judgment of the trial court is affirmed.

Affirmed.